## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MOHAMMED SHADI, | ) | |
| | ) | Case No.: |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| JUUL LABS, INC. and PAX LABS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Mohammed Shadi, by his attorneys, **WEITZ & LUXENBERG, P.C.** and **DOUGLAS & LONDON, P.C.**, upon information and belief, at all times hereinafter mention, allege as follows:

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiff resides.

## NATURE OF THE CASE

2.     This action is brought on behalf of Plaintiff, MOHAMMED SHADI, who used JUUL, an Electronic Nicotine Delivery System ("ENDS") that produces an aerosol vapor that is inhaled by users.  The JUUL is comprised of the JUUL Device and the JUUL Pod. The JUUL device is a closed system that contains a rechargeable battery, temperature regulator, and light and sensor system. The JUUL Pod is a replaceable cartridge that contains an atomizer and a salt-based nicotine solution.

3.     Defendants JUUL LABS, INC. and PAX LABS, INC. (hereinafter referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed JUUL.

4.     When warning of safety and risks of JUUL, Defendants negligently and/or fraudulently represented to Plaintiff and the public in general, that JUUL did not create a high risk of nicotine addiction in adolescents.

5.     Defendants intentionally targeted adolescents in their marketing campaigns and through the production of flavored JUUL Pods that concealed the nicotine content contained in the JUUL Pods.

6.     Defendants knowingly and/or intentionally sold JUUL Pods to minors through the use of an internet sales platform.

7.     Defendants failed to place a nicotine warning on the packaging of JUUL until August 2018.

8.     As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer serious and dangerous side effects including *inter alia* nicotine addiction, as well as other severe and personal injuries which are lasting in nature, including diminished enjoyment of life, as well as the need for lifelong treatment for addiction, monitoring, and/or medications, and fear of developing other health consequences. Plaintiff herein has sustained certain of the above health consequences due to Plaintiff's use of JUUL.

9.     Defendants concealed their knowledge of the nicotine content and other harmful chemicals contained in JUUL from the Plaintiff and the public in general.

10.     Consequently, Plaintiff seeks compensatory damages as a result of Plaintiff's use of JUUL, which has caused Plaintiff to suffer from nicotine addiction, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing other health consequences.

## PARTY PLAINTIFF

11.     Plaintiff, MOHAMMED SHADI, is a citizen of the United States of America, and is a resident of the State of Michigan.

12.     Plaintiff, MOHAMMED SHADI, was born on December 6, 2000.

13.     Plaintiff, MOHAMMED SHADI, first began using JUUL in or about 2016, and used JUUL up through the present.

14.     As a result of using Defendants' JUUL, Plaintiff MOHAMMED SHADI was caused to suffer from nicotine addiction and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

15.      The injuries and damages sustained by Plaintiff, MOHAMMED SHADI, were caused by Defendants' JUUL and/or the conduct and actions and/or omissions of the Defendants herein.

## PARTY DEFENDANTS

16.     Upon information and belief, Defendant PAX LABS, INC. is a privately held Delaware corporation with a principal place of business in California.

17.     JUUL was brought to the market in 2015. PAX LABS, INC. applied for and holds the patent associated with JUUL under U.S. Patent No. 9,215,895.

18.     Upon information and belief Defendant PAX LABS, INC. has transacted and conducted business in the State of Michigan.

19.     Upon information and belief, Defendant PAX LABS, INC.  has derived substantial revenue from goods and products used in the State of Michigan.

20.     Upon information and belief, Defendant, PAX LABS, INC., expected or should have expected its acts to have consequence within the United States of America and the State of Michigan, and derived substantial revenue from interstate commerce within the United States and the State of Michigan, more particularly.

21.     Upon information and belief, and at all relevant times, Defendant, PAX LAB, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute JUUL for use as an ENDS.

22.     Upon information and belief, Defendant JUUL LABS, INC. is a privately held Delaware corporation with a principal place of business in California. JUUL LABS, INC. was part of its parent company PAX LABS, INC. until 2017, when JUUL LABS, INC. became its own entity.

23.     Upon information and belief Defendant JUUL LABS, INC. has transacted and conducted business in the State of Michigan.

24.     Upon information and belief, Defendant JUUL LABS, INC.  has derived substantial revenue from goods and products used in the State of Michigan.

25.     Upon information and belief, Defendant, JUUL LABS, INC., expected or should have expected its acts to have consequence within the United States of

America and the State of Michigan, and derived substantial revenue from interstate commerce within the United States and the state of Michigan, more particularly.

26.    Upon information and belief, and at all relevant times, Defendant, JUUL LABS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute JUUL for use as an ENDS.

## FACTUAL BACKGROUND

27.    At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute JUUL.

28.    PAX LABS, INC. applied for and holds the patent associated with JUUL under U.S. Patent No. 9,215,895.

29.    Defendants launched JUUL in the United States in 2015.

30.    JUUL delivers a level of nicotine to the bloodstream as high or higher than traditional combustible cigarettes. (Bowen A XC, Inventor; PAX Labs, Inc., assignee. Nicotine Salt Formulations for Aerosol Devices and Methods Thereof. U.S. Patent 9,215,895).

31.    Defendants launched an extensive marketing campaign which included advertisements directly targeted towards adolescents and minors. Defendants targeted social media platforms and sponsored events primarily attended by teenagers.

32.    Defendants' advertising campaign focused on "vaporized" rather than smoking, misleading adolescents about the products purpose – to deliver nicotine to the blood stream at the same rate as combustible cigarettes. The advertisements showed healthy, attractive young men and women using JUUL. The advertisements focused on the colorful devices and variety of flavors with no mention of the nicotine content.

33.    A study performed at Stanford University found that JUUL's marketing "was patently youth oriented." Robert K. Jackler, MD. *JUUL Advertising Over its First Three Years on the Market. (January 31, 2019).* The study focused on the similarities between JUUL marketing and the early marketing of cigarettes, such as the use of young models and hosting youth-oriented events.

34.    Defendants particularly targeted social media platforms used by adolescents, such as Instagram, Facebook, and Twitter. Defendants also launched email campaigns that directly emailed advertisements to consumers, particularly minors.

35.    Defendants hired attractive young people to pose as models in their advertisements and to hand out free JUULS at events attended by adolescents, such as movie and music festivals.  These models were seen wearing clothing styles attributable to teenagers and adolescents.

7

36.     The advertisements typically featured these young models at social events and dance clubs, sharing JUUL with their friends and partners.

37.     Defendants hired social media influencers, with large adolescent followings, to promote JUUL on their social media platforms.

38.     JUUL hosted multiple events and parties that featured youth-oriented music, free "tastings" of JUUL, and free samples of JUUL.

39.     Following the advertising campaign in 2015, JUUL began trending on social media platforms, with adolescents and minors taking videos and pictures using their JUUL. Videos of adolescents "vaping" or "JUULing" became a social media craze.

40.     The FTC has made it illegal to advertise products in a deceptive or misleading manner. Federal Trade Commission Act 15 U.S. Code §45.

41.      The FTC has further noted the importance of practicing truth in advertising to adolescents by passing the Children's Online Privacy Protection Act.

42.     The Act makes it illegal to use unfair or deceptive acts and practices with children's information online, such as contacting a child through email without the parent's permission. Children's Online Privacy Protection Act 15 U.S. Code 15 U.S. Code §6502, et seq.

43.     Defendants failed to include nicotine content warnings on any of their

products until August of 2018.

44.     Defendants sold JUUL in stores and through an internet sales platform to minors.

45.     As a result of Defendants' aggressive marketing efforts, the FDA found that from 2017-2018 there was a 78% increase in high schoolers who used e-cigarettes and a 48% increase in middle schoolers who used e-cigarettes.

46.     A study performed by Truth Initiative revealed that adolescents were unaware of the nicotine content in JUUL.

47.     Nicotine addiction is a serious injury recognized by the medical community in the Diagnostic and Statistical Manual ("DSM"), categorized by "a problematic pattern of tobacco use, leading to clinically significant impairment or distress." *American Psychiatric Association.* (2013), *Diagnostic and Statistical Manual of Mental Disorders* (5th ed.).

48.     The DSM also notes the difficulty of ceasing use of nicotine through nicotine withdrawal. Nicotine withdrawal is categorized by irritability, anxiety, difficulty concentrating, restlessness, decreased heart rate, increased appetite or weight gain, dysphoric or depressed mood, and insomnia. *American Psychiatric Association.* (1994), *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.).

49.     Prior to and/or at the time of Plaintiff's use of JUUL, Plaintiff became

aware of the promotional and/or marketing materials described herein.

50.     Upon information and belief, Defendants made, distributed, marketed, and sold JUUL without adequate warning to Plaintiff and the general public that JUUL presented a risk of nicotine addiction and a markedly increased risk of nicotine addiction in adolescents until August 2018.

51.     Upon information and belief, Defendants ignored the association between the use of JUUL and the risk of developing nicotine addiction.

52.     By reason of the foregoing acts and omissions, the Plaintiff was caused to suffer from nicotine addiction, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

53.     Plaintiff has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that Plaintiff has suffered serious and dangerous side effects including, *inter alia* nicotine addiction, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, and monitoring and/or medications.

54.     By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' JUUL.

**FIRST CAUSE OF ACTION
AS AGAINST THE DEFENDANTS
(NEGLIGENCE)**

55.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

56.     Defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of JUUL into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

57.     Defendants failed to exercise ordinary care in the designing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of JUUL into interstate commerce in that Defendants knew or should have known that using JUUL created a high risk of unreasonable, dangerous side effects, including, nicotine addiction in minors, as well as other severe and personal injuries which are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, and monitoring and/or medications.

58.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)    Negligently failing to adequately and correctly warn the Plaintiff and the public of the dangers of JUUL;

(b)    Negligently advertising and recommending the use of JUUL to minors with sufficient knowledge as to its dangerous propensities;

(c)    Negligently designing JUUL in a manner which was dangerous to its users;

(d)    Negligently manufacturing JUUL in a manner which was dangerous to its users;

(e)    Negligently producing JUUL in a manner which was dangerous to its users;

(f)    Negligently assembling JUUL in a manner which was dangerous to its users;

(g)     Concealing information from the Plaintiff in knowing that JUUL was unsafe, dangerous, and/or contained a higher risk of nicotine addiction in adolescents;

59.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of JUUL in that they:

(a)     Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of JUUL;

(b)     Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning JUUL;

(c)     Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(d)     Failed to accompany their product with proper and/or accurate warnings regarding the high nicotine content in JUUL;

(e)     Failed to restrict sale of the JUUL to non-minors, with knowledge that minors were using and purchasing JUUL;

(f)     Were otherwise careless and/or negligent.

60.     Despite the fact that Defendants knew or should have known that JUUL caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell JUUL to minor consumers, including the Plaintiff.

61.     Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

62.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered and/or will continue to suffer.

63.     As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

64.     As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health,

incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (NEGLIGENCE *PER SE*)

65.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

66.     Defendants violated the Federal Trade Commission Act 15 U.S. Code §45, *et seq*., and the Children's Online Privacy Act 15 U.S. Code 15 U.S. Code §6502, *et seq*.

67.     These statutes are aimed at protecting consumers, such as the Plaintiff, from deceptive or misleading advertisements.

68.     Defendants' acts and omissions were the proximate cause and/or a substantial factor in bringing about the harm the Plaintiff has alleged herein.

69.     Plaintiff is among the class of individuals that these statutes were designed to protect.

70.     Plaintiff's injuries are the type that these federal statutes were intended to prevent.

71.    As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

72.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(STRICT PRODUCTS LIABILITY)**

73.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

74.    At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed JUUL as hereinabove described that was used by the Plaintiff.

16

75.     That JUUL was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

76.     At those times, JUUL was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

77.     The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of JUUL.

78.     The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

79.     At all times herein mentioned, JUUL was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective

and unsafe, especially when used in the form and manner as provided by the Defendants.

80.   Defendants knew, or should have known, that at all times herein mentioned its JUUL was in a defective condition, and was and is inherently dangerous and unsafe.

81.   At the time of the Plaintiff's use of JUUL, JUUL was being used for the purposes and in a manner normally intended.

82.   Defendants with this knowledge voluntarily designed its JUUL in a dangerous condition for use by the public, and in particular the Plaintiff.

83.   Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

84.   Defendants created a product unreasonably dangerous for its normal, intended use.

85.   The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that JUUL left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

86.   The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users

in the same defective and unreasonably dangerous condition in which the Defendants' JUUL was manufactured.

87.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

88.     The Plaintiff could not, by the exercise of reasonable care, have discovered JUUL's defects herein mentioned and perceived its danger.

89.     The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, nicotine addiction, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

90.     The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

91.     The JUUL designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to

inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including, nicotine addiction, as well as other severe and permanent health consequences from JUUL, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, JUUL, to adolescents and minors.

92.   By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, JUUL.

93.   Defendants' defective design, manufacturing defect, and inadequate warnings of JUUL were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

94.   That said defects in Defendants' drug JUUL were a substantial factor in causing Plaintiff's injuries.

95.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

96.     As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (STRICT PRODUCTS LIABILITY- FAILURE TO WARN)

97.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

98.     As commercial manufacturers, sellers, and distributors of JUUL, Defendants knew or should have known that exposure to nicotine was hazardous to human health.

99.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling JUUL was hazardous to human health.

100.   Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling JUUL would result in nicotine addiction and other injuries amongst users.

101.   Though Defendants knew or should have known about the seriousness of the consequences of failing to warn about the inherent dangers associated with JUUL, Defendants failed to warn of the dangers inherent in the use of the product.

102.   Though Defendants knew or should have known about the reasonably foreseeable hazards to human health and welfare associated with the use of JUUL, Defendants failed to provide adequate warnings of, or take any precautionary measures to mitigate, those hazards.

103.   Defendants communicated to consumers information that failed to contain relevant warnings, hazards, contraindications, efficacy, side effects, and precautions. In particular, Defendants:

> (a) disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of JUUL;
>
> (b) continued to aggressively promote JUUL even after Defendants knew or should have known of the unreasonable risks from use;
>
> (c) failed to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health

risks associated with the use of JUUL and the comparative severity of such adverse effects;

(d) failed to provide warnings, instructions or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks, including but not limited to those associated with the severity of JUUL's effect on nicotine addiction; and

(e) overwhelmed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, the risks associated with the use of JUUL.

104. Adequate instructions and warnings on the JUUL product could have reduced or avoided these foreseeable risks of harm to Plaintiff.

105. Had Defendants properly disclosed and disseminated the risks associated with JUUL, Plaintiff would have avoided the risk of developing injuries as alleged herein.

106. Defendants' failure to provide adequate and sufficient warnings for the JUUL that they manufactures, marketed, and sold renders JUUL a defective product.

107. Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries as alleged herein.

108.   The Defendants are strictly liable to Plaintiff for injuries caused by their negligent or willful failure to provide adequate warnings or other clinically relevant information and data regarding the risks associated with its use.

109.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

110.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (STRICT PRODUCTS LIABILITY –DEFECTIVE DESIGN)

111.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

112.   By virtue of manufacturing, marketing, and selling JUUL, Defendants has a strict duty not to place an unreasonably dangerous product into the stream of commerce that would injure consumers, such as Plaintiff.

113.   Defendants knew or should have known that exposure to nicotine was hazardous to human health, particular to adolescent and minor users when it, or products containing it, were used in their foreseeable and intended manner.

114.   Knowing of the dangerous and hazardous properties of JUUL due to research and testing, Defendants could have manufactured, marketed, and sold alternative designs or formulations of JUUL.

115.   These alternative designs were already available, practical, and technologically feasible.

116.   The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm resulting from Defendants' manufacture, marketing, and sale of JUUL.

117.   As manufacturers of JUUL, Defendants not only had the ability to alter the product in such a way that abilities of the product while eliminating its inherently unsafe character, but also were in the best position to do so.

118.   JUUL's high nicotine content and links to numerous serious medical conditions are not open and obvious conditions or part of the general public knowledge of JUUL.

119.   The inherent risks associated with JUUL's use far outweigh any benefits, thereby rendering JUUL unreasonably dangerous.

120.   The manufacture, sale, and distribution of unreasonably dangerous JUUL renders the Defendants' product defective.

121.   Defendants' defective design of JUUL is the direct and proximate cause of Plaintiff's injuries complained of herein.

122.   As a direct result of Defendants' design of a defective product, Defendants are strictly liable in damages to the Plaintiff.

123.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

124.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

125.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (BREACH OF EXPRESS WARRANTY)

126.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

127.   Defendants expressly warranted that JUUL was safe.

128.   JUUL does not conform to these express representations because JUUL is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.   As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

129.   Plaintiff did rely on the express warranties of the Defendants herein.

130.   The Defendants herein breached the aforesaid express warranties, as JUUL was unsafe, particularly for minors and adolescents.

131.   Defendants expressly represented to Plaintiff, that JUUL was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

132.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that JUUL was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants, such as nicotine addiction.

133.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

134.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further

alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## SEVENTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (BREACH OF IMPLIED WARRANTIES)

135.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

136.   At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold JUUL and/or previously manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold JUUL.

137.   At the time Defendants marketed, sold, and distributed JUUL for use by Plaintiff, Defendants knew of the use for which JUUL was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

138.   The Defendants impliedly represented and warranted to the users of JUUL that the product was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

139.   That said representations and warranties aforementioned were false, misleading, and inaccurate in that JUUL was unsafe, unreasonably dangerous,

improper, not of merchantable quality, and contained a highly addictive substance.

140.   Plaintiff did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

141.   Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether JUUL was of merchantable quality and safe and fit for its intended use.

142.   JUUL was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

143.    The Defendants herein breached the aforesaid implied warranties, as JUUL was not fit for its intended purposes and uses.

144.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

145.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## EIGHTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (FRAUDULENT MISREPRESENTATION)

146.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

147.   The Defendants falsely and fraudulently represented to the Plaintiff and the public in general, that said product, JUUL, had been tested and was found to be safe.

148.   That representations made by Defendants were, in fact, false.

149.   When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

150.   These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff and the public in general, and were made with

the intent of inducing the public in general, particularly adolescents and minors, to purchase said product, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

151.   At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used JUUL, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

152.   In reliance upon said representations, the Plaintiff was induced to and did use JUUL, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

153.   Said Defendants knew and were aware or should have been aware that JUUL lacked adequate and/or sufficient warnings.

154.   Defendants knew or should have known that JUUL had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, down-played warnings and/or failed to warn against any such injuries.

155.   Defendants brought JUUL to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

156.   As a result of the foregoing acts and omissions, the Plaintiff was caused to Suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

157.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## NINTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (FRAUDULENT CONCEALMENT)

158.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

159.   At all times during the course of dealing between Defendants and Plaintiff, Defendants misrepresented the safety of JUUL for its intended use.

160.   Defendants knew or were reckless in not knowing that its representations were false.

161.   In representations to Plaintiff, Defendants fraudulently concealed and intentionally omitted the following material information:

(a)   that JUUL contained nicotine;

(b)   that nicotine content in JUUL pods are as high as or higher than

(c)   the nicotine content in combustible cigarettes;

(d)   that the use of JUUL placed adolescents at a markedly increased risk for addiction to nicotine;

(e)   that Defendants were aware of the danger associated with the use of JUUL.

162.   Defendants were under a duty to disclose to Plaintiff the dangerous nature of JUUL, including but not limited to the heightened risks of nicotine addiction.

163.   Defendants had sole access to material facts concerning the dangerous nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used JUUL, including the Plaintiff, in particular.

164.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of JUUL was made purposefully, willfully, wantonly, and/or

recklessly, to mislead Plaintiff and the general public, into reliance, continued use of JUUL, and actions thereon, and to cause them to purchase JUUL and/or use the product.

165.   Defendants knew that Plaintiff had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding JUUL, as set forth herein.

166.   Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

167.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

168.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## TENTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

169.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

170.   Defendants had a duty to represent to the Plaintiff and the public in general that said product, JUUL, had been tested and found safe.

171.   The representations made by Defendants were, in fact, false.

172.   Defendants failed to exercise ordinary care in the representation of JUUL, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented JUUL's high risk of unreasonable, dangerous side effects.

173.   Defendants breached their duty in representing JUUL's serious side effects to the Plaintiff and the public in general.

174.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

175.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## ELEVENTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (FRAUD AND DECEIT)

176.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

177.   Defendants conducted research and used JUUL as part of their research.

178.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public and the Plaintiff that JUUL was safe and did not contain nicotine.

179.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, including the Plaintiff.

180.   Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff.

181.   The information distributed to the public and the Plaintiff by Defendants, including but not limited to reports, press releases, advertising campaigns, social media ads, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

182.   The information distributed to the public and the Plaintiff by Defendants intentionally included representations that Defendants' JUUL product was safe and effective for use.

183.   The information distributed to the public and the Plaintiff, by Defendants intentionally included false representations that JUUL was not injurious to the health and/or safety of its intended users.

184.   These representations were all false and misleading.

185.   Upon information and belief, Defendants intentionally suppressed, ignored and disregarded information not favorable to the Defendants, such as the nicotine content contained in JUUL.

186.   Defendants intentionally made material representations the public and the Plaintiff, regarding the safety of JUUL, specifically but not limited to JUUL not having dangerous and serious health and/or safety concerns.

187.   That it was the purpose of Defendants in making these representations to deceive and defraud the public and the Plaintiff, to gain the confidence of the public and/or the Plaintiff, to falsely ensure the quality and fitness for use of JUUL and induce the public, and/or the Plaintiff to purchase and/or continue to use JUUL.

188.   That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

189.   That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff and were made in order to induce the Plaintiff to rely upon misrepresentations and caused the Plaintiff to purchase and use JUUL.

190.    That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of JUUL to the public at large and the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not safe.

191.    That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of JUUL by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of JUUL.

192.    That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff into a sense of security so that Plaintiff would rely on the representations and purchase and use JUUL.

193.    Defendants, through their public relations efforts, which included but were not limited to advertisements, knew or should have known that the public, including the Plaintiff, would rely upon the information being disseminated.

194.    Defendants utilized direct to consumer advertising to market, promote, and/or advertise JUUL.

195.   That the Plaintiff did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations and were thereby induced to purchase and use JUUL.

196.   That at the time the representations were made, the Plaintiff did not know the truth with regard to the dangerous and serious health and/or safety concerns of JUUL.

197.   That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

198.   That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of JUUL, Plaintiff would not have purchased and used JUUL.

199.   That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

200.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, addiction to nicotine, as well as other severe and personal injuries which are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

201.  As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## TWELTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (MICHIGAN CONSUMER PROTECTION ACT)

202.  Plaintiff repeats and re-alleges each and every allegation of this Complaint as if fully restated herein.

203.  Defendants conduct "trade or commerce" within the State of Michigan as defined under section 2(1)(g) of the Michigan Consumer Protection Act, MCL 445.902(1)(g).

204.  Plaintiff purchased JUUL for personal use in the State of Michigan.

205. Defendants conduct constitutes an "unfair, unconscionable, or deceptive method, act, or practice" as defined under section 3 of the Michigan Consumer Protection Act, MCL 445.903(1), including, but not limited to, the following:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that it does not have (MCL 445.903(3)(1)(c));

b.  Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented (MCL 445.903(3)(1)(g));

c. Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer (MCL 445.903(3)(1)(s));

d. Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner (MCL 445.903(3)(1)(cc)).

## <u>CLAIM FOR PUNITIVE DAMAGES</u>

206.   Plaintiff repeats and re-alleges each and every allegation of this Complaint as if fully restated herein.

207.   Plaintiff asserts a claim for punitive damages under Michigan law.

208.   Upon information and belief, Defendants engaged in willful, wanton, malicious, and/or reckless conduct that was done without regard to the consequences

or the safety of the Plaintiff and caused injuries upon Plaintiff, disregarding his protected right.

209. Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to provide consumers with available materials, information and warnings that would have ultimately dissuaded consumers, including the Plaintiff, from purchasing and using JUUL, thus depriving consumers from weighing the true risks against the benefits of purchasing and using JUUL.

210. Defendants have caused significant harm to Plaintiff and have demonstrated a conscious and outrageous disregard for their safety with implied malice, warranting the imposition of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

a. Awarding Plaintiff compensatory damages against Defendants in an amount sufficient to fairly and completely compensate Plaintiffs for all damages;

b.    Awarding Plaintiff treble damages against Defendants so to fairly and completely compensate Plaintiff for all damages, and to deter similar wrongful conduct in the future;

c.    Awarding Plaintiff punitive damages against Defendants in an amount sufficient to punish Defendants for its wrongful conduct and to deter similar wrongful conduct.

d.    Awarding Plaintiff costs and disbursements, costs of investigations, attorneys' fees and all such other relive available under Michigan law;

e.    Awarding that the costs of this action be taxed to Defendants; and

f.    Awarding such other and further relief as the Court may deem just and proper.

# **JURY DEMAND**

Plaintiff demands a trial by jury of any and all issues in this matter so triable

pursuant to Federal Rule of Civil Procedure 38(b).

Dated: December 6, 2019

Respectfully submitted,

**WEITZ & LUXENBERG, P.C**

*/s/ Paul F. Novak* _____

Paul F. Novak (P39524)
Tiffany R. Ellis (P81456)
3011 W. Grand Boulevard
Suite 2150
Detroit, MI 48202
Phone: (313) 800-4170
Fax: (646) 293-7957
pnovak@weitzlux.com
tellis@weitzlux.com

**DOUGLAS & LONDON, P.C.**

Michael A. London (*Pro hac vice* to be filed)
59 Maiden Lane, Floor 6
New York, NY 10038
Phone: (212) 566-7500
Fax: (212) 566-7501
mlondon@douglasandlondon.com

*Attorneys for Plaintiff*